**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**BILLY MORRISON,**

    *Plaintiff*,

v.                                  **CASE NO.:  4:18cv576-MW/CAS**

**THE FLORIDA DEPARTMENT
OF CORRECTIONS, et al.**

    *Defendant*.
_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

This is a civil rights case. Plaintiff Billy Morrison was a prisoner of Defendant Florida Department of Corrections ("FDC"). Plaintiff has chronic hepatitis C. Plaintiff brings claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") against FDC arising from its failure to timely provide adequate treatment for the disease.[1] FDC has moved for summary judgment. ECF No. 87. For the reasons set forth below, FDC's motion, ECF No. 87, is **DENIED**.

---

[1] Plaintiff's claims against all other Defendants were voluntarily dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41. ECF No. 107.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id.* A nonmoving party's failure to provide sufficient evidence of an element for which it bears the burden of proof at trial mandates the entry of summary judgment for the moving party, "since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As it must, this Court accepts the facts in the light most favorable to the nonmovant, *see Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

## II. UNDISPUTED MATERIAL FACTS[2]

Plaintiff is fifty-three years old and a former FDC inmate. He was incarcerated from November 13, 2013, to June 5, 2019. For the majority of his incarceration, Plaintiff was housed in correctional facilities operated and managed by GEO Group, Inc. ("GEO Group"), a private prison operator and manager contracted by the Florida Department of Management Services ("FDMS").

During his initial health screening, Plaintiff informed FDC medical staff that he had been infected with the hepatitis C virus ("HCV") since he was eighteen years old. FDC's initial medical evaluation confirmed Plaintiff had HCV. As a result, Plaintiff was referred to the gastrointestinal clinic for treatment of his HCV in December 2013.

FDC monitored Plaintiff's blood test results throughout his incarceration, including Plaintiff's blood platelet count. A low blood platelet count is consistent with liver disease. The lower limit of the "normal" range for a blood platelet count is 144,000/μl. During his initial health screening, Plaintiff's blood platelet count was 151,000/μl. On October 15, 2014, Plaintiff's platelet count had dropped to 116,000/μl. On March 5, 2015, his platelet count had fallen to 93,000/μl. On May 12, 2015, Plaintiff's platelet count was even lower, having fallen to 71,000/μl.

---

[2] Unless otherwise noted, this Court has determined the following facts are not subject to genuine dispute.

Between August 2015 and when he started treatment with DAAs in March 2018, Plaintiff's platelet count varied between 86,000/µl and 48,000/µl.

FDC medical staff determined Plaintiff had cirrhosis by September 22, 2015, at the latest. As FDC's expert, Dr. Howard J. Worman, explains in his expert report:

> By the time Mr. Morrison first consented to treatment on September 22, 2015, he had cirrhosis. This was clear from his persistently low platelet counts since 2014. A low platelet count occurs in cirrhosis primarily because these blood elements are sequestered in an enlarged spleen. The spleen may be enlarged because fibrosis and abnormal cellular architecture impedes blood flow through the liver. This leads to increased pressure in the part of the circulatory system bringing blood to the liver is known as portal hypertension.

ECF No. 66-1 at 9. Subsequent medical tests confirm Dr. Worman's opinion. On November 9, 2017, a liver ultrasound showed Plaintiff had an enlarged liver and spleen, as well as gallstones. On December 8, 2017, a Fibrotest—a blood test to estimate liver fibrosis—showed Plaintiff was an F4 on the METAVIR scale.

FDC medical staff also determined Plaintiff required treatment for his HCV as early as September 22, 2015. On that date, FDC's medical records indicate Plaintiff was "clinically indicated for [treatment]." On that same day, Plaintiff consented to treatment.[3] As a result, Plaintiff was transferred to Graceville CI, a higher-medical grade facility capable of treating Plaintiff's HCV in October 2015.

---

[3] From November 2013 until September 2015, Plaintiff repeatedly refused treatment for his HCV. At his deposition, Plaintiff testified that he refused treatment because he was pursuing a GED and did not want to be transferred to a different facility for treatment prior to completion of the GED program.

4

In April 2017, FDC medical staff once again referred Plaintiff for possible treatment of his chronic HCV.

FDC—despite its medical staff's repeated determinations that Plaintiff required treatment for his HCV—did not treat Plaintiff with DAAs until March 29, 2018.[4]

On April 6, 2018, Plaintiff had an upper gastrointestinal endoscopy that showed nonbleeding stage III esophageal varices.[5] On the same day, his physician treated these varices with rubber band ligation. A second procedure to band Plaintiff's varices was performed on June 6, 2018.

On June 20, 2018, Plaintiff completed his course of treatment with DAAs. Subsequent medical tests showed Plaintiff had an enlarged spleen and that his platelet count remained below normal levels. Fortunately for Plaintiff, on September

---

[4] FDC argues that the delay in treatment was due to Plaintiff's hypothyroidism. ECF No. 87 at 11. FDC's argument is refuted by Dr. Worman's expert opinion. As Dr. Worman explains, Plaintiff's hypothyroidism was a contraindication for treatment with interferon-alpha. *See* ECF No. 66-1 at 10. However, the FDA approved Harvoni—a DAA treatment without interferon-alpha—for treatment of HCV in October 2014. *See id.*; *see also* ECF No. 87 at 11. Thus, by the time Plaintiff consented to treatment in September 2015, his hypothyroidism did not justify a delay in treatment because DAAs without interferon-alpha were available at that time.

[5] Esophageal varices are abnormal, enlarged veins in the esophagus. This condition occurs most often in people with serious liver diseases and develops when normal blood flow to the liver is blocked by scar tissue in the liver, causing blood to flow into smaller blood vessels that are not designed to carry large volumes of blood. Esophageal varices do not usually cause signs and symptoms unless they leak blood or rupture, causing life-threatening bleeding. *Esophageal varices*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/esophageal-varices/symptoms-causes/syc-20351538 (last visited February 20, 2020).

17, 2018, blood tests did not detect hepatitis C RNA in his blood.[6] Plaintiff's blood platelet count remained low (58,000/μl) as of December 2018.

### III. ARGUMENTS

FDC argues it is entitled to summary judgement as to Plaintiff's claims because (1) Plaintiff failed to exhaust his administrative remedies, (2) GEO Group, not FDC, was responsible for Plaintiff's medical care, and FDC promptly treated Plaintiff with DAAs, (3) Plaintiff has not proven FDC was deliberately indifferent to his serious medical needs, and (4) Plaintiff has failed to show he was discriminated against by reason of his HCV. For the reasons stated below, there can be no dispute that Plaintiff exhausted his administrative remedies and that FDC was responsible for Plaintiff's medical care for the entirety of his incarceration. Additionally, there is, at the very least, a disputed issue of fact as to whether FDC was deliberately indifferent to Plaintiff's serious medical needs and whether Plaintiff was discriminated against by reason of his HCV.

---

[6] To be sure, Plaintiff's claims for compensatory damages are not mooted by his release or by his eventual receipt of DAA treatment. *See McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984) ("A claim for damages does not expire upon the termination of the wrongful conduct. Unlike declaratory and injunctive relief, which are prospective remedies, awards for monetary damages compensate the claimant for alleged past wrongs.") (citation omitted).

## IV. ANALYSIS

### A. Plaintiff Did Not Fail to Exhaust His Administrative Remedies

FDC argues Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). To satisfy this requirement, "a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison." *Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200, 202 (11th Cir. 2018).

Critically, however, a plaintiff cannot fail to exhaust administrative remedies when those administrative remedies are not "available" to him. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). A grievance procedure is not available—and thus need not be exhausted—if, because of a defendant's misrepresentations, a prisoner does not know there is a basis for a grievance. *See Booth v. Allen*, 758 F. App'x 899, 901 (11th Cir. 2019) ("Prison administrators may frustrate inmates' efforts to bring a grievance by, for example, misleading . . . inmates to prevent them from using the proper procedures."); *Bracero*, 748 F. App'x at 202.

Plaintiff submitted three inmate requests—on February 4, 2016, August 16, 2016, and April 9, 2017—to the prison's medical department inquiring into whether and when he would receive treatment for HCV. On July 31, 2017, Plaintiff filed a formal grievance complaining that he was entitled to DAA treatment. When that grievance was denied on August 18, 2017, Plaintiff timely appealed to the Office of the Secretary of FDC on August 25, 2017. Plaintiff's appeal was successful, and FDC ordered that Plaintiff be transferred for evaluation and treatment of his HCV. As previously noted, Plaintiff began DAA treatment on March 29, 2018.

FDC argues that Plaintiff's July 31, 2017, formal grievance is the only procedurally sound grievance filed by Plaintiff and that, as a result of Plaintiff's successful appeal to the Office of the Secretary, Plaintiff was promptly treated with DAAs. FDC argues Plaintiff's three prior inmate requests were procedurally defective and therefore insufficient to exhaust his claims. FDC further argues that Plaintiff knew there was a basis for a formal grievance on the dates he filed the inmate requests because the requests "clearly establish that Plaintiff did not believe he was going to receive priority-level 1 care" for his HCV on those dates. ECF No. 87 at 25.

FDC's arguments are without merit. The undisputed facts demonstrate FDC medical staff (1) diagnosed Plaintiff with HCV in 2013, (2) informed Plaintiff he qualified for HCV treatment in 2014, (3) determined HCV treatment was clinically

indicated for Plaintiff in 2015, (4) transferred Plaintiff to a different facility to enable him to receive treatment in 2015, and (5) repeatedly assured Plaintiff he would receive HCV treatment throughout 2016 and mid-2017. Far from "clearly establish[ing]" Plaintiff did not believe he was going to receive treatment for his HCV, Plaintiff's inmate requests and FDC's responses to those requests demonstrate he believed FDC would, as it had indicated numerous times, treat his HCV. *See* February 4, 2016 Inmate Request [ECF No. 35-3 at 5] ("I am asking . . . whether medical will start the treatments for [HCV] because this was the reason I was transferred here[.] Could you please let me know?"); August 16, 2016 Inmate Request [ECF No. 35-3 at 4] ("How long is it going to take to get treatment?"); April 9, 2017 Inmate Request [ECF No. 35-3 at 3] ("I would like to know when I will receive these treatments I've been here for eighteen months."); *see also, e.g.*, FDC's Response to Plaintiff's August 16, 2016 Inmate Request [ECF No. 35-3 at 4] ("[Y]ou will be treated when the times comes . . . ."). Therefore, no administrative remedy was available to Plaintiff prior to July 2017 because FDC misled Plaintiff into believing he would receive HCV treatment sooner than he did.

FDC argues that even if it misled Plaintiff into believing he would receive HCV treatment sooner than he did, this type of misrepresentation did not render administrative remedies unavailable to Plaintiff. Rather, based on its reading of the Supreme Court's decision in *Ross*, FDC asserts that only a misrepresentation *as to*

9

*the existence or rules of the grievance process itself* makes administrative remedies unavailable. ECF No. 87 at 25–26. Contrary to FDC's assertion, the *Ross* Court's list of three examples of unavailability of administrative remedies is not exhaustive. *See, e.g.*, *Montalban v. Doe*, No. 18-11697, 2020 WL 704911, at *4 (11th Cir. Feb. 12, 2020) ("The Supreme Court has identified *at least* three scenarios 'in which an administrative remedy . . . is not capable of use to obtain relief' ") (emphasis added) (quoting *Ross*); *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2019) ("Administrative remedies are unavailable in three *main* scenarios.") (emphasis added); *see also Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) ("But [the three circumstances listed in *Ross*] were only examples, not a closed list, and to the extent the district court thought they were the latter, it erred."); *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) ("By way of a *non-exhaustive* list, the Court recognized three circumstances in which an administrative remedy was not capable of use . . . .") (emphasis added).

In sum, FDC made administrative remedies unavailable to Plaintiff, and Plaintiff therefore need not have exhausted FDC's grievance procedure. Accordingly, FDC is not entitled to summary judgment on this basis.

### B. FDC Was Ultimately Responsible for Plaintiff's Medical Care

FDC argues it cannot be held responsible for GEO Group's failure to provide Plaintiff with DAA treatment. ECF No. 87 at 26–31. FDC emphasizes that a different

10

state agency—FDMS—contracted with GEO Group to provide Plaintiff's healthcare and that "each time Plaintiff's condition was brought to FDC's attention, FDC acted appropriately in attempting to facilitate Plaintiff's treatment, and ultimately . . . treated Plaintiff . . . ." ECF No. 87 at 27–29. FDC further argues that Florida law requires the medical care of inmates in private prisons to be delegated to private prison contractors. ECF No. 100 at 15.

> As the Eleventh Circuit has made plain, however,
>
> The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with [a private contractor]. Although [the private contractor] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable.

*Ancata v. Prison Health Servs.*, 769 F.2d 700, 705 (11th Cir. 1985); *accord West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody . . . ."). Moreover, Florida law clearly assigns FDC responsibility for the care, custody, and control of inmates incarcerated within the Florida correctional system. *See* § 945.04(1), Fla. Stat. (2019) ("The Department of Corrections shall be responsible for the inmates and for the operation of, and shall have supervisory and protective care, custody and control of, all buildings, grounds, property of, and matters connected with, the correctional system."); § 944.715, Fla. Stat. (2019)

11

("Inmates incarcerated in a private correctional facility are in the legal custody of the department."); *see also* Op. Att'y Gen. Fla. 98-69 (1998), 1998 WL 804417 ("When read together, Chapters 944 and 957, Florida Statutes, provide a system for the incarceration of inmates in both public and private facilities . . . . this in no way abrogates the department's ultimate responsibility for and legal custody of incarcerated individuals."). Simply put, FDC cannot avoid liability by pointing the finger at a private contractor.

FDC also argues that Plaintiff has not shown "that a policy or custom of FDC caused the alleged delay" in Plaintiff's HCV treatment. ECF No. 100 at 14. FDC argues that because it updated its policy guidelines in June 2016 to reflect that DAAs are the recommended treatment for chronic HCV and compensated cirrhosis, June 2016 is the earliest possible date FDC could have received funds to treat Plaintiff. ECF No. 100 at 14.

Not so. There is, at the very least, a factual dispute as to whether FDC had a policy and practice of not treating inmates with HCV due to the cost of treatment with DAAs.[7]  There is also, at the very least, a factual dispute as to whether this policy and practice continued even after FDC updated its HCV-treatment policy in 2016.

---

[7] "[C]ost is not a factor which can justify the lack of timely medical treatment for" serious medical conditions. *Fields v. Corizon*, 490 F. App'x 174, 185 (11th Cir. 2012).

For these reasons, this Court concludes FDC is not entitled to summary judgment on the rationale that a private contractor was responsible for Plaintiff's medical care during his incarceration.

### C. Defendant Is Not Entitled to Summary Judgment on Plaintiff's ADA and RA Claims

Title II of the ADA provides in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

"[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates . . . ." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).[8] That is, "a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). Although "the ADA . . . was never

---

[8] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). Although FDC prophylactically denied it receives federal funding, *see* Answer to Am. Compl. [ECF No. 60] ¶ 12, there appears to be no genuine dispute that FDC does indeed receive federal funding. Indeed, it would seem this Court could take judicial notice of FDC's receipt of federal funds. If this fact is indeed in dispute, FDC should move for reconsideration of this order.

Therefore, as relevant to the current motion, the standards under the RA and ADA are the same. For ease of reference, this order often refers only to the ADA, without mentioning the identical standards under the RA.

intended to apply to decisions involving . . . medical treatment," *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005), the Supreme Court has made clear that "medical 'services'" fall within the ambit of Title II, *see Yeskey*, 524 U.S. at 210. Therefore, a qualified inmate who is denied the benefit of medical services by reason of his disability can state a Title II ADA claim.

FDC argues Plaintiff is not a "qualified" individual under the ADA "because[,] absent his chronic HCV, he would not qualify for the receipt of DAAs." ECF No. 87 at 35 (citing *Schiavo*). The crux of FDC's argument is that Plaintiff's ADA and RA claims fail because Plaintiff essentially challenges a medical decision relating to the treatment of his disability. "Under Eleventh Circuit precedent, a Rehabilitation Act or ADA claim cannot be based on a medical treatment decision." *Estate of Smith v. Forest Manor, Inc.*, No.7:16-cv-1774, 2018 WL 2770203, at *5 (N.D. Ala. June 8, 2018) (citing *Schiavo*). Nevertheless, the FDC is subject to the RA and ADA, and it faces certain duties under those statutes. One of those duties to provide treatment for its inmates' disabilities. *See Lonergan v. Fla' Dep't of Corr.*, 623 F. App'x 990, 994 (11th Cir. 2015) ("[T]he failure of the prison to give the Plaintiff the treatment prescribed by his dermatologist is sufficient for the Plaintiff to plead a prima facie ADA claim."); *accord Frasca v. Fla. Dep't of Corr.*, No. 3:16-cv-1468, 2018 WL 3642275, at *4 (M.D. Fla. Aug. 1, 2018) (on motion to dismiss, finding plaintiff sufficiently alleged ADA and RA claims where plaintiff "sought the

treatment that medical personnel prescribed" but prison officials refused to provide the prescribed treatment); *Johnson v. Bryson*, No. 5:16-cv-453, 2017 WL 3951602, at *2 (M.D. Ga. Sept. 8, 2017) ("Plaintiff has alleged more than a mere disagreement with his medical treatment. Plaintiff contends that he was diagnosed with Hepatitis C, and despite having been prescribed treatment, Defendants have failed to treat him for nine years due to the costs."); *Stafford v. Carter*, No. 1:17-cv-289, 2018 WL 4361639, at *3 (S.D. Ind. Sept. 13, 2018) ("[Plaintiffs] assert that Wexford has refused to treat Plaintiffs' [HCV], which is actionable under the ADA."); *Mitchell v. Williams*, No. 6:16-cv-93, 2016 WL 723038, at *4 (S.D. Ga. Feb. 22, 2016) (same).

Contrary to FDC's mischaracterization, Plaintiff's claims are not based on a disagreement with his medical treatment. Rather, Plaintiff's claims are based on FDC's refusal to accommodate Plaintiff's disability (i.e., Plaintiff's chronic HCV) while at the same time providing treatment to inmates with less costly disabilities or with no disabilities at all. The undisputed facts demonstrate FDC failed to provide Plaintiff DAAs from the time he consented to treatment in September 2015 until March 2018. FDC medical staff diagnosed Plaintiff with chronic HCV, determined treatment for Plaintiff's HCV was "clinically indicated," and even transferred Plaintiff to a different facility for the purposes of receiving treatment. Plaintiff repeatedly sought DAA treatment. Nonetheless, FDC refused to provide Plaintiff with DAA treatment until March 2018. *Cf. Mitchell*, 2016 WL 723038, at *4 (on

motion to dismiss, finding plaintiff stated an ADA claim where plaintiff alleged the Georgia Department of Corrections refused to treat patients with HCV due to the treatment's costs but provided treatment to inmates with less costly medical conditions); *Cal. Found. for Indep. Living Ctrs. v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1058 (E.D. Cal. 2015) (on plaintiff's motion for summary judgment, finding defendant's discrimination was "by reason of" the plaintiff's disabilities "because [plaintiffs] would not have been so disproportionately burdened were they persons without disabilities").

Finally, FDC argues it is entitled to summary judgment on Plaintiff's claims because Plaintiff has not shown that FDC violated Plaintiff's rights under the ADA and RA with discriminatory intent. "To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *Id.* "That is an exacting standard which requires more than gross negligence." *Id.* (internal citation and quotation marks omitted). To satisfy this standard, a plaintiff must "show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Id.* (quotation marks and citation omitted). As this Court has

16

previously noted, the Eleventh Circuit recognizes several examples of conduct that is considered more than mere negligence, including "(1) knowledge of a serious medical need and a failure or refusal to provide care; [and] (2) delaying treatment for non-medical reasons[.]" *Keohane v. Jones*, 328 F. Supp. 3d 1288, 1314 (N.D. Fla. 2018) (quoting *Baez v. Rogers*, 522 F. App'x 819, 822 (11th Cir. 2013)).

As demonstrated at length above, the undisputed factual record in this case demonstrates FDC knew Plaintiff had chronic HCV[9] and refused to provide DAA treatment between September 2015 and March 2018. There is, at the very least, a factual dispute as to the reason for FDC's refusal to provide Plaintiff with DAA treatment between these dates. Accordingly, Defendant's motion for summary judgment on this basis is due to be denied.

## V. CONCLUSION

For these reasons,

**IT IS ORDERED**:

Defendant's motion for summary judgment, ECF No. 87, is **DENIED**.

**SO ORDERED on February 22, 2020.**

                                                  **s/Mark E. Walker**
                                                  **Chief United States District Judge**

---

[9] "That Hepatitis C presents a serious medical need is undisputed." *Loeber v. Andem*, 487 F. App'x 548, 549 (11th Cir. 2012).