# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**BILLY MORRISON,**

    *Plaintiff*,

v.                                       CASE NO.: 4:18cv576-MW/CAS

**THE FLORIDA DEPARTMENT
OF CORRECTIONS, et al.**

    *Defendant*.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a civil rights case. Plaintiff Billy Morrison was a prisoner of Defendant Florida Department of Corrections ("FDC"). Plaintiff has chronic hepatitis C. Plaintiff brings claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") against FDC arising from its failure to timely provide adequate treatment for the disease.[1] This Court has considered, after hearing on February 27, 2020, Plaintiff's motion for partial summary judgment as to FDC's liability under the ADA and RA. ECF No. 55. For the reasons set forth below, Plaintiff's motion, ECF No. 55, is **GRANTED in part** and **DENIED in part**.

---

[1] Plaintiff's claims against all other Defendants were voluntarily dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41. ECF No. 107.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id.* A nonmoving party's failure to provide sufficient evidence of an element for which it bears the burden of proof at trial mandates the entry of summary judgment for the moving party, "since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As it must, this Court accepts the facts in the light most favorable to the nonmovant, *see Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

## II. ANALYSIS

The record evidence,[2] construed in the light most favorable to FDC, demonstrates Plaintiff is entitled to partial summary judgment as to certain elements of his ADA and RA claims.[3] Title II of the ADA provides in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

"[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates . . . ." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). That is, "a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). Although "the ADA . . . was never intended to apply to decisions involving . . . medical treatment," *Schiavo ex rel.*

---

[2] This Court has set forth the material facts in its order denying FDC's motion for summary judgment and will not repeat them here. *See* ECF No. 122.

[3] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). Although FDC prophylactically denied it receives federal funding, *see* Answer to Am. Compl. [ECF No. 60] ¶ 12, there appears to be no genuine dispute that FDC does in fact receive federal funding. Indeed, it would seem this Court could take judicial notice of FDC's receipt of federal funds. If this fact is in dispute, FDC should move for reconsideration of this order.
   Therefore, as relevant to the current motion, the standards under the RA and ADA are the same. For ease of reference, this order often refers only to the ADA, without mentioning the identical standards under the RA.

*Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005), the Supreme Court has made clear that "medical 'services'" fall within the ambit of Title II, *see Yeskey*, 524 U.S. at 210. Therefore, a qualified inmate who is denied the benefit of medical services by reason of his disability can state a Title II ADA claim.

FDC does not dispute that Plaintiff can state a Title II ADA claim for medical services. *See* ECF No. 68 at 17. FDC instead disputes that Plaintiff (1) has a disability within the meaning of the ADA, (2) is a "qualified individual" for the receipt of DAAs, and (3) was discriminated against by FDC by reason of his HCV. FDC also argues that there can be no finding of discriminatory intent because FDC was not deliberately indifferent to Plaintiff's HCV. For the reasons stated below, the record refutes FDC's argument that Plaintiff did not have "disability" and was not a "qualified individual" within the meaning of the ADA. The current state of the record before this Court, however, precludes summary judgment on the issues of whether Plaintiff was discriminated against by reason of his HCV and whether FDC acted with discriminatory intent.

*i. Plaintiff Has a Disability*

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. A claimant only needs to satisfy one of those definitions. *Gordon*

*v. E.L. Hamm & Assocs.*, 100 F.3d 907, 911 (11th Cir. 1996). The applicable regulations instruct that "[t]he definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i).[4] Indeed, "[t]he question of whether an individual meets the definition of 'disability' . . . should not demand extensive analysis." *Id.* § 35.101(b); *accord Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 & n.2 (11th Cir. 2014) ("When it enacted the [ADA Amendments Act of 2008], Congress indicated that one of its purposes was to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.") (internal quotation marks omitted).

A "physical impairment" means "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: . . . digestive, . . . immune, circulatory, hemic, lymphatic, skin, and endocrine[.]" *Id.* § 35.108(b)(1)(i). The definition also includes "contagious and noncontagious diseases." *Id.* § 35.108(b)(2).

"Major life activities" include, but are not limited to:

> The operation of major bodily function, such as the functions of the immune system, . . . and digestive, . . . circulatory, . . . endocrine, hemic, [and] lymphatic . . . systems. **The operation of a major bodily**

---

[4] "Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, the regulations must [be given] legislative and hence controlling weight." *Shotz v. Cates*, 256 F.3d 1077, 1079 n.2 (11th Cir. 2001) (alteration in original, internal citation and quotation omitted).

5

**function includes the operation of an individual organ within a body system.**

*Id.* § 35.108(c)(1)(ii) (emphasis added).

The term "substantially limits" must be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." *Id.* § 35.108(d)(1)(i). An impairment need only substantially limit one major life activity to be considered a disability. *See id.* § 35.108(d)(1)(iii). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 35.108(d)(1)(iv). The "ameliorative effects of mitigating measures" are not considered in the determination of whether an impairment substantially limits a major life activity. *Id.* § 35.108(d)(1)(viii). Furthermore, "the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." *Id.* § 35.108(d)(1)(ii).

Finally, a disability determination is an individualized inquiry. Indeed, beginning with the first definition, the applicable regulation explicitly provides that "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id.* § 35.108(d)(1)(vi). Although "the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage," this Court must make an individualized assessment as to whether Plaintiff's impairment substantially limited a major life activity during his incarceration. *Id.* § 35.108(d)(2)(ii). These same requirements

6

apply to the ADA's second definition of disability (i.e., the "record of" definition). *Id.* § 35.108(e)(2) (noting that "the principles articulated in paragraph (d)(1) of this section apply"); § 35.108(d)(2)(ii) (referring to the "record of" prong).

Here, the factual record demonstrates Plaintiff had a "disability" under each of the ADA's three definitions of the term. First, Plaintiff's chronic HCV is a physical impairment that substantially limited the proper function of an individual organ within Plaintiff's body system—i.e., Plaintiff's liver. The evidence shows Plaintiff's liver was cirrhotic[5] by at least September 2015. During his incarceration, Plaintiff's blood platelet counts dropped below the normal level and persistently remained below the normal range. Plaintiff also had non-bleeding esophageal varices, an enlarged spleen, and portal hypertension—signs and symptoms of abnormal liver function. *See Toland v. BellSouth Telecomms., LLC*, No. 1:15-CV-2441, 2017 WL 6380641, at *1–4 (N.D. Ga. Aug. 9, 2017) (on summary judgment, sustaining plaintiff's objection to magistrate judge's finding that plaintiff failed to show he was disabled under the ADA because plaintiff's hypertension substantially limited the function of plaintiff's circulatory/cardiovascular systems), *aff'd sub nom. Toland v. AT&T Inc.*, 735 F. App'x 676 (11th Cir. 2018) (per curiam); *Lonergan v.*

---

[5] "The term 'cirrhosis' refers to 'any group of chronic diseases of the liver characterized by loss of normal lobular architecture with fibrosis, and by destruction of parenchymal cells and their regeneration to form nodules.'" *Stafford v. Carter*, No. 1:17-cv-289, 2018 WL 4361639, at *8 n.3 (S.D. Ind. Sept. 13, 2018) (quoting *Dorland's Medical Dictionary*).

*Dep't of Corr. Sec'y Julie Jones*, No. 4:14cv42, 2017 WL 1197869, at *8–9 (N.D. Fla. Feb. 28, 2017) (on cross motions for summary judgment, rejecting defendant's argument that plaintiff was not a qualified individual under the ADA where it was undisputed that plaintiff's skin condition had a high risk of evolving into skin cancer), *report and recommendation adopted sub nom. Lonergan v. Jones*, 2017 WL 1202660 (N.D. Fla. Mar. 30, 2017); *cf. Dalton v. Manor Care of W. Des Moines IA, LLC*, No. 4:12-cv-172, 2013 WL 1131126, at *17–18 (S.D. Iowa Nov. 13, 2013) (granting defendant's motion for summary judgment on plaintiff's ADA claim because plaintiff's "stage one chronic kidney disease" did not cause her kidney to function abnormally and tests revealed no damage to plaintiff's kidneys) *aff'd*, 782 F.3d 955 (8th Cir. 2015); *Horstkotte v. Comm'r, N.H. Dep't of Corr.*, No. 08-cv-61-JL, 2009 WL 4907025, at *2, *5 (D.N.H. Dec. 11, 2009) (granting defendant's motion for summary judgment on plaintiff's ADA claim because plaintiff was "at a very early stage of the [hepatitis C] disease," "not suffering any symptoms," and "near the bottom of stage one" on the METAVIR scale, but recognizing that "hepatitis C might qualify as a disability at a more advanced stage").

Second, it is beyond peradventure that Plaintiff had a "record of such an impairment" because Plaintiff's medical record with FDC is replete with laboratory data and physician's diagnoses consistent with chronic HCV and cirrhosis. *See* 28 C.F.R. § 35.108(e); *Carr. v. Publix Super Mkts., Inc.*, 170 F. App'x 57, 61 (11th Cir.

2006) ("To establish a record of impairment under the ADA sufficient to be considered disabled, the record of impairment must show that the impairment substantially limited the claimant in one or more of his major life activities.").

Third, Plaintiff was "regarded as having such an impairment" because FDC knew he was infected with HCV and failed to timely provide Plaintiff with DAAs. *See* 28 C.F.R. § 35.108(f)(1); *see also id.* § 35.108(f)(2) ("A public entity may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor[.]").

To be clear, this Court recognizes that there are genuine factual disputes as to whether Plaintiff's cirrhosis progressed to a decompensated stage, whether Plaintiff's liver condition worsened between the time he consented to treatment and when he finally received treatment, and whether Plaintiff's liver disease hindered his ability to engage in exercise or other physical activity. However, the factual record regarding Plaintiff's liver disease readily satisfies the ADA's definition of "disability" as a matter of law. *See* 28 C.F.R. § 35.108(d)(1)(i)–(ix); *Mazzeo*, 746 F.3d at 1268; *see also Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) ("The [ADA] addresses substantial limitations on major life activities, not utter inabilities."); *cf.* 28 C.F.R. § 35.108(d)(2)(iii)(H)–(J) ("[I]t should be easily concluded that . . . . Diabetes substantially limits endocrine function; . . . [and] Human Immunodeficiency Virus (HIV) infection substantially limits immune function[.]");

9

*id.* § 35.108(d)(3)(iv) ("[conditions like diabetes and HIV] by their inherent nature should be easily found to impose a substantial limitation on major life activity, and . . . the individualized assessment should be particularly simple and straightforward."). Once this legal threshold is satisfied, the extent of Plaintiff's HCV-related symptoms and their impact on his life are material with respect to Plaintiff's damages rather than FDC's liability under the ADA and RA.

For these reasons, Plaintiff's motion for summary judgment is **GRANTED** as to the issue of whether he had a "disability" under the ADA and RA.

### ii. Plaintiff Is a "Qualified" Individual

Under the ADA, a "qualified individual with a disability" is:

> An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

FDC argues—as it did in its motion for summary judgment—that Plaintiff is not a "qualified" individual under the ADA "because[,] absent his chronic HCV, he would not qualify for the receipt of DAAs." ECF No. 68 at 30 (citing *Schiavo*); *see also* ECF No. 87 at 34–37.[6]

---

[6] FDC points to Plaintiff's lack of "fatigue" as evidence that Plaintiff had no "difficulty accessing recreational services, or what those recreational services even are." ECF No. 68 at 9–

As this Court explained in its order denying FDC's motion for summary judgment, Plaintiff's claims are based on FDC's refusal to accommodate Plaintiff's disability (i.e., Plaintiff's chronic HCV) rather than a mere disagreement with his medical treatment. *See* ECF No. 122 at 14–16. The evidence demonstrates FDC failed to provide Plaintiff DAAs—the only medical treatment available for HCV under the prevailing standard of care since 2014—from the time he consented to treatment in September 2015 until March 2018. FDC medical staff diagnosed Plaintiff with chronic HCV, determined treatment for Plaintiff's HCV was "clinically indicated," and even transferred Plaintiff to a different facility for the purposes of receiving treatment. Plaintiff repeatedly sought DAA treatment. Nonetheless, FDC refused to provide Plaintiff with DAA treatment until March 2018.

There can be no genuine dispute as to these facts. Accordingly, Plaintiff's motion for summary judgment is **GRANTED** as to the issue of whether he was a "qualified" individual under the ADA and RA.

*iii. A Genuinely Disputed Issue of Fact Precludes Summary Judgment on Whether Plaintiff Was Denied Medical Services by Reason of His HCV*

Based on the current state of the record, there remains a genuine factual dispute as to whether Plaintiff was denied medical services because he had HCV.

---

10, 32. This is not a material fact because Plaintiff's ADA and RA claims are based on FDC's denial of medical services rather than its denial of recreational services.

11

Plaintiff would be entitled to summary judgment on this issue if there was no genuine dispute that FDC refused to treat Plaintiff's HCV because of the cost of DAAs but provided treatment to inmates with less expensive disabilities. *Cf. Mitchell*, 2016 WL 723038, at *4 (on motion to dismiss, finding plaintiff stated an ADA claim where plaintiff alleged the Georgia Department of Corrections refused to treat patients with HCV due to the treatment's costs but provided treatment to inmates with less costly medical conditions). But, as this Court explained in its order declining to apply the doctrine of issue preclusion, the ambiguous evidentiary record in this case could lead a reasonable jury to infer either (1) Geo Group denied Plaintiff treatment based on FDC's financial concerns or (2) Geo Group's denial of Plaintiff's treatment had nothing to do with FDC's financial concerns. *See* ECF No. 142 at 3–4. For purposes of this motion, this Court must make all reasonable inferences in favor of FDC. Accordingly, Plaintiff's motion is **DENIED** as to the issue of whether Plaintiff was denied medical services by reason of his HCV.

*iv. A Genuinely Disputed Issue of Fact Precludes Summary Judgment on Whether FDC Violated Plaintiff's Rights Under the ADA and RA with Discriminatory Intent*

"To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his

12

statutory rights." *Id.* "That is an exacting standard which requires more than gross negligence." *Id.* (internal citation and quotation marks omitted). To satisfy this standard, a plaintiff must "show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Id.* (quotation marks and citation omitted). As this Court has previously noted, the Eleventh Circuit recognizes several examples of conduct that is considered more than mere negligence, including "(1) knowledge of a serious medical need and a failure or refusal to provide care; [and] (2) delaying treatment for non-medical reasons[.]" *Keohane v. Jones*, 328 F. Supp. 3d 1288, 1314 (N.D. Fla. 2018) (quoting *Baez v. Rogers*, 522 F. App'x 819, 822 (11th Cir. 2013)).

Again, the ambiguous evidentiary record in this case precludes summary judgment on this issue because the basis for Geo Group's refusal of Plaintiff's treatment is undeveloped. Drawing all reasonable inferences in favor of FDC, this Court therefore finds there is a genuine dispute as to whether FDC acted with discriminatory intent. *Cf. Clemons v. Dart*, 168 F. Supp. 3d 1060, 1072 (N.D. Ill. 2016) (on summary judgment, finding that "given [plaintiff's] obvious need for an ADA compliant cell and the presence of those cells within the [correctional facility], a reasonable juror could only find that the defendants acted with deliberated indifference and 'fail[ed] to act' upon the likelihood that [plaintiff] would be denied access to the needed 'programs and services.' ").

### III. CONCLUSION

For these reasons,

**IT IS ORDERED**:

1. Plaintiff's motion for summary judgment, ECF No. 55, is **GRANTED in part** and **DENIED in part**.

2. Plaintiff's motion is **GRANTED** as to the issues of (1) whether Plaintiff was "disabled" for purposes of the ADA and RA and (2) whether Plaintiff is a "qualified individual" for purposes of the ADA and RA.

3. Plaintiff's motion is **DENIED** as to the issues of (1) whether Plaintiff was denied medical services by reason of his HCV and (2) whether FDC acted with discriminatory intent.

**SO ORDERED on March 2, 2020.**

             <u>s/Mark E. Walker</u>    
             **Chief United States District Judge**